IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Alcon Associates, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:04-22151-18 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| Odell Associates, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    BACKGROUND

This matter is before the court on defendant Odell Associates, Inc.'s ("Odell")

motion for summary judgment.  In November 1997 Odell contracted with the United

States Department of Agriculture to provide architectural services for the construction of

the USDA Vegetable Laboratory in Charleston, South Carolina.  Odell was also to

administer the construction contract.  USDA contracted with Adams Construction

Company, Inc. ("Adams") to construct the building pursuant to Odell's plans.  Adams

contracted with Travelers Casualty and Surety of America ("Travelers") to provide a

performance bond.  Adams subsequently defaulted and was terminated as the general

contractor.  Pursuant to the performance bond, in February 2000 USDA and Travelers

amended the USDA-Adams contract and made Travelers the general contractor for the

project.  Travelers then contracted with plaintiff Alcon Associates, Inc. ("Alcon") to

complete Adams' construction obligations.  The agreements noted that Alcon would act

as Traveler's agent in completing the project.  Alcon submitted its claims/bills to

Travelers, who forwarded them to the USDA.

1

The USDA denied some of Alcon's bills, and so in March 2004 Traveler's (on behalf of Alcon) filed a complaint against the government in the United States Court of Federal Claims. The complaint alleged the government breached the construction contract[1] and the implied warranty regarding adequacy of plans and specifications,[2] and claimed actual damages of at least $1,150,000.00.

In May 2004, USDA and Travelers settled the claim for $840,000.00, all of which Travelers conveyed to Alcon. Under the terms of the settlement, Travelers dismissed and abandoned "all claims against the United States, its political subdivisions, its officers, and employees, arising out of or related to the claims advanced in this lawsuit, regardless of whether they were included in the complaint, including but not limited to any claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages."[3] The parties also agreed that the settlement would not bind the parties and would not be "cited or otherwise referred to, in any proceeding, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this agreement."

Alcon initiated this action against Odell in August 2004 with a complaint in state

---

[1] The alleged breaches included "assessing liquidated damages, improperly withholding payment, failing to extend the contract performance period, directing [Alcon] to perform work not required by the Contract, failing to issue modifications for additional work directed by the USDA, failing to accept the building as substantially complete when it was substantially complete, and requiring [Alcon] to maintain the building after it was substantially complete."

[2] Travelers/Alcon alleged the USDA failed "to provide adequate plans and specifications for construction of the project."

[3] The settlement does not dismiss claims reserved by Landscape Pavers (a subcontractor of plaintiff).

2

court alleging negligence and breach of warranty.  Alcon's negligence claim alleges

Odell failed to prepare adequate plans and specifications for the project, that the plans

had defects, and that Odell did not administer the Adams contract as specified by its

provisions.[4]  The breach of warranty claim contends that Odell failed to provide plans

that were free of defects, accurate, and sufficient for completing the work required by the

construction contract.  Alcon claims at least $1,000,000.00 in damages, including

punitive damages stemming from Odell's alleged willful delays and failure to provide

information to complete the project.

    Both suits involve two sets of issues: claims involving Odell's architectural plans,

and claims arising from Odell's administration of the contract.  Alcon concedes that the

claims arising from the architectural plans involve no different facts or allegations in the

second suit than existed in the first suit.  With regards to the contract administration

claims, Alcon contends evidence supporting a claim for punitive damages against Odell

differentiates the second suit from the settlement.  Punitive damages were not available in

the first suit since the Court of Federal Claims lacks the authority to award punitive

damages.  See Green vs. United States, 65 Fed. Cl. 375, 379 (2005).  Alcon alleges that a

series of Odell internal memoranda demonstrate the latter's intentional effort to disrupt

---

[4] Alcon contends Odell did not administer the construction contract in accordance
with its terms and conditions, by failing to (1) properly consider change requests
submitted by Alcon; (2) properly consider requests for extensions; (3) respond to requests
for information and clarifications within a reasonable time; (4) issue changes for
additional work; (5) extend the construction contract as a result of defects in the plans
and specifications and changes; (6) properly inspect the work and directing Alcon to
perform work not required by the construction contract; and (7) withholding information
from Alcon. (See compl. ¶ 7.B.)

Alcon's ability to complete the project.

Odell has filed a motion for summary judgment on the basis that the settlement precludes the present suit.  The parties have filed a statement of stipulated facts.

## II.    DISCUSSION

Odell advances four theories to dismiss the claims: collateral estoppel, res judicata, accord and satisfaction, and election of remedies.  The preclusive effect of a prior federal judgment in subsequent federal actions (even in diversity cases) is determined by federal law. Aerojet-General Corp. v. Askew, 511 F.2d 710, 715 (5th Cir. 1975).

### a.    Collateral Estoppel

Defensive collateral estoppel generally precludes relitigation of an issue by a plaintiff who has lost the same issue in a prior case.  In order for collateral estoppel to apply, the issue sought to be precluded from religitation must have been actually determined in the prior proceeding.  In re Swilley, 295 B.R. 839, 846 (Bankr. D.S.C. 2003).  A settlement "does not give rise to collateral estoppel unless it is clear that the parties intended the settlement to have such an effect." Id. at 847 (citing Arizona v. California, 530 U.S. 392, 415 (2000) (noting "settlements ordinarily occasion no issue preclusion (sometimes called collateral estoppel) unless it is clear . . . that the parties intended their agreement to have such an effect")).  The Travelers settlement specifically stated that it does not bind the parties and was not to be cited in future judicial proceedings.  The plain language of the settlement demonstrates that the parties did not intend it to have future preclusive effect; therefore, collateral estoppel is not available.

4

### b.    Res Judicata

A party invoking res judicata must establish (1) that there was a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits. <u>Meekins v. United Transportation Union</u>, 946 F.2d 1054, 1058 (4th Cir. 1991).  A court-approved settlement generally receives the same res judicata effect as a litigated judgment.  <u>Holywell Corp. v. United States</u>, No. 99-1399, 2000 WL 1233582 (4th Cir. Aug. 31, 2000).

Odell argues that it was in contractual privity with the USDA, and Alcon was in privity with Travelers; therefore, there is an identity of parties in both actions. Contractual privity does not necessarily equate to privity for purposes of res judicata. "Privity" in this context merely means a close enough relationship to be bound via res judicata.  <u>Martin v. American Bancorporation</u>, 407 F.3d 643, 651 (4th Cir. 2005.  To be in privity with a party to a former litigation, the nonparty "must be so identified in interest with a party to former litigation that [the nonparty] represents precisely the same legal right in respect to the subject matter involved." <u>Id</u>.  The Fourth Circuit admits this is an "elusive concept," and lists three generally recognized categories

> of nonparties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a nonparty who controls the original action; (2) a successor in interest to a prior party; and (3) a nonparty whose interests were adequately represented by a party to the original action.

<u>Id</u>.  Alcon is in privity with Travelers because Alcon controlled the original suit; plaintiff's bills were the foundation for the first action and Travelers paid the entire settlement to plaintiff.

Alcon is not bound via res judicata unless Odell is in privity with the original defendant.  Courts generally focus on the defendants' identity of interest in the first suit rather than the nature of the relationship between them.  See Headley v. Bacon, 828 F.2d 1272, 1277 (8th Cir. 1987).  "The linchpin is whether the nonparty was adequately represented in the original action."  U.S. v. Gambler's Supply, 925 F. Supp. 658, 664 (D.S.D. 1996).  While Odell was in contractual privity with the USDA, that relationship alone does not suffice for res judicata privity.  Odell and USDA did not necessarily share interests in the first suit: USDA was not looking after the interests of Odell, the suits are based on different legal theories, and neither punitive nor delay damages were available against USDA.  Therefore, USDA's and Odell's interests were not identical in the first suit.  Odell had no input in the defense of the original action and is not shielded by the settlement release.  Odell notes that Travelers' complaint alleged USDA was liable for faulty plans prepared by Odell; even if true, it does not mean that USDA represented Odell's interests in the first suit.  The contractual privity/agency relationship alone is insufficient to establish res judicata privity.  Therefore, res judicata is not available.

**c.     Accord and Satisfaction**

Odell cites several cases for the proposition that accord and satisfaction bar Alcon's second suit.  This doctrine requires a meeting of the minds "that the payment tendered fully satisfies the creditor's demand."  Tremont Const. v. Dunlap, 310 S.C. 180, 182, 425 S.E.2d 792, 794 (Ct. App. 1993).  The settlement reflects an accord and satisfaction between the USDA and Travelers/Alcon, but there is no accord between Alcon and Odell.  Accord and satisfaction bars future Alcon claims against USDA, but

6

not necessarily against Odell.  Even assuming Odell were an agent of USDA, the

settlement only releases the United States, its political subdivisions, officers and

employees.  The release does not cover USDA's agents.

Odell cites Andrews v. Gee, 599 F. Supp. 251 (D.S.C. 1984) for the suggestion

that Alcon's injury has already been "satisfied."  Andrews barred a malpractice action

against a navy doctor after the plaintiff recovered against the government for negligent

treatment under the Federal Tort Claims Act.  Odell emphasizes the court's application of

the doctrine of satisfaction: "Because a party may have but one satisfaction for a wrong,

once a party is fully compensated for his or her injuries, he or she is barred from filing a

second lawsuit based on the same injuries." Andrews, 599 F. Supp. at 254.  However, the

first suit did not "fully compensate" Alcon because the second suit requests certain

damages that were unavailable in the first action.

Andrews is partly based on a federal district court case (Garner v. Wyeth

Laboratories, 585 F. Supp. 189 (D.S.C. 1984)) that the South Carolina Supreme Court

has noted was an inaccurate synopsis of state law.  Garner recovered a FTCA verdict

against a military hospital, then sued the drug maker for actual and punitive damages.

The court barred the claim for actual damages under the doctrine of satisfaction, and

reasoned the claim for punitive damages could not proceed because the underlying cause

of action was extinguished.  In 2001 the state supreme court specifically rejected Garner

in McGee v. Bruce Hospital, 344 S.C. 466, 472, 545 S.E.2d 286, 288 (2001).  Two

doctors operated on McGee at the same time, and he died from complications.  The estate

recovered actual and punitive damages against a doctor-A, but continued the suit against

doctor-B.  A subsequent ruling permitted McGee to seek only punitive damages only

against doctor-B.  The court ultimately concluded that permitting the estate to recover

punitive damages against doctor-B did not amount to double recovery; the punitive

damages recovered from doctor-A did not reflect the amount for which a jury might find

doctor-B responsible.  The court noted that a jury had not yet had an opportunity to

determine whether respondent's conduct was willful, wanton, or in reckless disregard of

petitioner's rights." Id.

       Alcon identifies two types of damages that could not be recovered in the first suit.

Punitive damages could not be recovered because the action was a contract dispute in the

Court of Federal Claims.  Nor could Alcon pursue damages for construction delays in the

original suit, since the government was not the sole cause of the delay.  See PCL Constr.

Serv. v. United States, 47 Fed. Cl. 745, 801 (2000) (noting "only if the delay was caused

solely by the government will the contractor be entitled to both an extension of time

within which to perform, and recovery of excess costs associated with the delay").

Alcon's attempt to recoup punitive and delay damages is not a double recovery, as the

first court could not hear these issues.  The settlement does not and could not "reflect the

amount of punitive [or other] damages for which a jury may find that [Odell] is

responsible." McGee, 344 S.C. at 472, 545 S.E.2d at 289.

       However, accord and satisfaction does preclude the remainder of Alcon's claims

for actual, incidental and compensatory damages.  Alcon concedes that the operative

facts for the plans and specifications claims are the same in both suits.  Further, Alcon

differentiates between the contract administration claims by pointing to the types of

8

damages available.  With the exception of the two previously identified types of damages, the settlement addresses all of Alcon's injuries.  As such, Alcon will only be able to pursue redress for those injuries the Court of Federal Claims could not hear.

Odell also cites to an Connecticut case which used an agency analysis to bar a contractor's subsequent suit against a designer after settling with the entity that commissioned the project. Associated Const. Co. v. Camp, Dresser & McKee, 646 F. Supp. 1574 (D. Conn. 1986) ("resolution of claims against the principal . . . based on the conduct of the agent, resolves also, by accord and satisfaction, the claims based on the same conduct against the agent").  Associated Construction lacks an important, distinguishing aspect of the instant case, specifically, that the first court could not hear the full realm of damages.  Moreover, the settlement specifically does not release USDA's agents.

> ### d.    Election of Remedies

Election of remedies involves a "choice between different forms of redress afforded by law for the same injury" and aims to prevent a double recovery.  Williams v. Riedman, 339 S.C. 251, 275, 529 S.E.2d 28, 41 (Ct. App. 2000).  As discussed above, Alcon's recovery of previously unaddressed damages against Odell would not amount to a double recovery.

## III.    CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that defendant Odell's motion for summary judgment be **DENIED** in part and **GRANTED** in part.  Alcon may pursue punitive damages and delay damages against Odell.  The remainder of Alcon's

claim, for all other damages, is barred for the reasons described above.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 29, 2005**
**Charleston, South Carolina**